# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| VINCENT LEAHY on Behalf of Himself and All Others Similarly Situated, | **Civil Action No.** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| EQUIFAX, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Vincent Leahy ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this class action complaint against Defendant Equifax, Inc. ("Equifax" or "Defendant"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## NATURE OF THE ACTION

1.    This is a class action brought on behalf of all persons who were impacted by the "glitch" in Equifax's technology systems, which resulted in Equifax sending inaccurate credit scores to lenders about individuals who applied for credit from mid-March through early April 2022 (the "Glitch").

2.      Equifax is one of the three largest consumer reporting agencies, as defined by the Fair Credit Reporting Act, 16 U.S.C. § 1681, *et seq.* ("FCRA"). Consumer reporting agencies monitor, collect, and assess credit, repayment, and other information on consumers, and produce a credit report and credit score for individuals. Equifax handles the credit information for more than 200 million consumers in the United States.

3.      Equifax is subject to the FCRA and is required to follow reasonable procedures to "assure maximum possible accuracy" of the consumer credit information it provides to lenders. FCRA § 1681e. Equifax is allowed to perform credit reporting services, involving sensitive consumer credit information, only if it adheres to the requirements meant to protect the privacy and accuracy of such information, such as the FCRA.

4.      However, on August 2, 2022, Equifax admitted that between March 17, 2022 and April 6, 2022, a "coding issue" impacted how credit scores were calculated, which resulted in consumers' credit scores shifting, and for some individuals, as many as 25 points or more.[1]

5.      Equifax sent the erroneous scores on people applying for auto loans, mortgages and credit cards to banks and nonbank lenders—including JPMorgan

---

[1] EQUIFAX, https://www.equifax.com/newsroom/all-news/-/story/equifax-statement-on-recent-coding-issue/ (last visited August 26, 2022).

Chase & Co., Wells Fargo & Co., and Ally Financial Inc.[2]  Even a minor discrepancy in a consumer's credit score can result in a loan being denied or a higher interest rate that increases loan payment amounts and lengthens repayment schedules.  The incorrect credit scores resulted in Class Members getting higher interest rates and others being denied credit entirely.

6.    Defendant's actions or inactions that allowed for the Glitch are a violation of its duties and obligations as a credit reporting agency under the FCRA. Accordingly, Plaintiff seeks to recover FCRA statutory damages to the fullest extent allowable by law.

7.    Plaintiff also seeks (i) damages sufficient to provide quality credit repair services to each person affected by the Glitch for their respective lifetimes; and (ii) a fund to which such persons may apply for reimbursement and out-of-pocket expenses they incurred as a result of the Glitch.

8.    Additionally, Plaintiff seeks injunctive relief requiring Equifax to (i) conduct audits to properly identify which consumers' credit scores and consumer reports were affected by the Glitch; and (ii) identify and notify all individuals who were affected by the Glitch.

---

[2] *See* Andrew Ackerman and AnnaMaria Andriotis,  *Equifax Sent Lenders Inaccurate Credit Scores on Millions of Customers*, WALL STREET JOURNAL (Aug. 2, 2022, 3:11 pm), available at https://www.wsj.com/articles/equifax-sent-lenders-inaccurate-credit-scores-on-millions-of-consumers-11659467483 (last visited August 26, 2022).

9.   Because of Equifax's acts and/or omissions, willful disregard and conduct, and want of ordinary care, and the resulting harm from the Glitch, Plaintiff and Class Members have suffered actual injury, have suffered, and will continue to suffer, economic damages and other injury and actual harm as described herein.

## PARTIES

10.   Plaintiff Vincent Leahy is and was a citizen and a resident of Bronx, New York during the relevant time period.

11.   Plaintiff Leahy applied for a home equity line of credit ("HELOC") in or about March 2022.  In connection with that application, on or about March 31, 2022, his credit was run through Equifax resulting in a score of 717.  The score was nearly 100 points below what Plaintiff Leahy, who diligently monitored his credit, knew his actual credit score to be.  The credit score he received from Equifax in or about the March-April 2022 time period was inaccurate.

12.   Less than a half year prior to the issuance of the inaccurate Equifax credit report, Plaintiff Leahy applied for and received a HELOC through KeyBank. In connection with that application, in or about October 2021, his credit was run through Equifax resulting in a score of 808.

13.   As a result of the Glitch, the interest rate offered or available to Plaintiff Leahy in connection with his March-April 2022 HELOC application was

significantly raised, negatively impacting Plaintiff Leahy's application process and his access to available funds.

14.     Plaintiff Leahy, when he was provided with the March-April 2022 Equifax credit report by KeyBank, could not ascertain the basis for why his reported credit score was significantly lower than his recently reported credit scores, and appreciably lower than what he knew and understood about his credit score.

15.     As a result of the Glitch, or result of Equifax's failure to provide an accurate credit score, Plaintiff Leahy was unable to receive the interest rate that he would have received had the Equifax credit score been accurate.  Plaintiff Leahy, in turn, suffered damages in the form of a higher credit score, access to credit, and access to a lower interest rate loan.

16.     Defendant Equifax Inc., one of the three largest consumer credit reporting agencies, is a Georgia corporation domiciled in Georgia. Equifax's headquarters and principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

## **JURISDICTION AND VENUE**

17.     The Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under a federal statute, the Fair Credit Reporting Act.

18.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount

in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from Defendant.

19.     This Court has general personal jurisdiction over Equifax because its principal place of business is in Georgia and its contacts with Georgia are continuous and systematic.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District, and Defendant transacts substantial business in this District.

## COMMON FACTUAL ALLEGATIONS

**A.     Equifax Is Required to Ensure Credit Reports are as Accurate as Possible**

21.     As one of the major credit reporting agencies in the United States, Equifax generates and sells consumer reports or "credit reports" containing consumer information and details of a consumer's credit history to businesses and its recurring clients.  Equifax acknowledges that, as a consumer reporting agency, it "impact[s] some of life's most pivotal moments."[3]

22.     The FCRA defines consumer reports as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general

---

[3] EQUIFAX, https://www.equifax.com/about-equifax/who-we-are/ (last visited Aug. 26, 2022).

reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" in lending decisions.[4]

23.    Because of the importance of consumer report accuracy to businesses and consumers, the structure of the FCRA creates legal standards and requirements to support the policy goal of accurate credit reporting.[5]

24.    Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

25.    The FCRA places strict obligations on credit reporting agencies, such as Defendant, when it comes to maintaining the accuracy of consumer credit reports. According to the CFPB, "[a]ccuracy in consumer reports is of vital importance to the consumer reporting system, particularly as consumer reports play an increasingly important role in the lives of American consumers."[6]

---

[4] 15 U.S.C. § 1681a, *et seq*.

[5] Bureau of Consumer Fin. Prot.*, Fair Credit Reporting; Name-Only Matching Procedures,* 86 FR 62468 (Nov. 10, 2021)*, available at* https://www.federalregister.gov/documents/2021/11/10/2021-24471/fair-credit-reporting-name-only-matching-procedures#p-63 (last visited August 26, 2022).

[6] Bureau of Consumer Fin. Prot., *Fair Credit Reporting; Name-Only Matching Procedures*, 86 FR 62468, 62468 (Nov. 10, 2021).

26.     As such, Equifax is permitted to perform credit reporting services only if it adheres to the requirements of laws meant to protect the accuracy and privacy of such information.

**B.     The Glitch Impacted Millions of Consumers**

27.     On May 27, 2022, National Mortgage Professional first reported that Equifax had provided inaccurate credit scores on millions of U.S. consumers seeking loans during March and April of 2022. [7]

28.     In a statement emailed to National Mortgage Professional, Equifax officials acknowledged there had been a coding issue within a program slated for replacement, and that it may have resulted in a potential miscalculation of certain attributes used in model calculations.[8]

29.     The scores were sometimes off by 20 points or more, which is enough to alter the interest rates consumers were offered or to result in their applications being rejected altogether.

30.     The inaccurate scores were sent from mid-March through early April of 2022.  Despite the importance of accuracy in consumer credit reporting, Equifax

---

[7] *See* Steve Goode, *Equifax Telling Lenders of Potential Errors in Credit Scores,* NATIONAL MORTGAGE PROFESSIONAL (May 27, 2022), *available at* https://nationalmortgageprofessional.com/news/equifax-telling-lenders-potential-errors-credit-scores  (last visited August 26, 2022).
[8] *Id.*

waited until May to report the errors to lenders.[9]  Equifax acknowledged to resellers and lenders that for some transactions, certain attribute values — such as "number of inquiries within one month" or "age of oldest tradeline" — were potentially incorrect.[10]

31.    Even though potentially millions of consumers had inaccurate information provided to lenders, Mark Begor, Equifax, Inc.'s chief executive, publicly stated that "[t]he impact really is going to be quite small," and that it is "not something that's meaningful to Equifax."[11]

32.    However, according to the Bureau of Consumer Financial Protection, the effects of inaccurate information are anything but insignificant:

> Inaccurate information in consumer reports can have significant adverse impacts on consumers. These impacts are particularly concerning for prospective renters and job seekers struggling to recover from the impacts of the COVID-19 pandemic. Consumers with inaccurate information in their consumer reports may, for example, be

---

[9] *See* Andrew Ackerman and AnnaMaria Andriotis,  *Equifax Sent Lenders Inaccurate Credit Scores on Millions of Customers*, WALL STREET JOURNAL (Aug. 2, 2022, 3:11 pm), available at https://www.wsj.com/articles/equifax-sent-lenders-inaccurate-credit-scores-on-millions-of-consumers-11659467483 (last visited August 26, 2022).).

[10] *See* Steve Goode, *Equifax Telling Lenders of Potential Errors in Credit Scores,* NATIONAL MORTGAGE PROFESSIONAL (May 27, 2022), *available at* https://nationalmortgageprofessional.com/news/equifax-telling-lenders-potential-errors-credit-scores (last accessed August 26, 2022).

[11] *See* Andrew Ackerman and AnnaMaria Andriotis,  *Equifax Sent Lenders Inaccurate Credit Scores on Millions of Customers*, WALL STREET JOURNAL (Aug. 2, 2022, 3:11 pm), available at https://www.wsj.com/articles/equifax-sent-lenders-inaccurate-credit-scores-on-millions-of-consumers-11659467483 (last visited August 26, 2022)..

denied credit or housing they would have otherwise received, or may be offered less attractive terms than they would have been offered if their information had been accurate.[12]

33.    These concerns were realized for the millions of individuals, including Plaintiff and Class Members, who were denied loans or offered less attractive terms than they would have otherwise received had their information been accurate.

34.    As the Wall Street Journal reported, "[t]he glitch [ ] affected many lenders across multiple consumer loan products, not just mortgages . . .[and] [t]he percentage of incorrect scores provided to lenders varied . . . At one big bank, for example, 18% of applicants during the three-week period had incorrect scores, with an average swing of 8 points."[13]

35.    Equifax told one large auto lender that about 10% of applicants during the three-week period had inaccurate scores and that several thousand saw a change of 25 points or more on their credit score.[14]

36.    As a result of the inaccurate reporting of their consumer credit information, Plaintiff and Class Members have experienced injuries, including, but

---

[12] BUREAU OF CONSUMER FINANCIAL PROTECTION, https://files.consumerfinance.gov/f/documents/cfpb_name-only-matching_advisory-opinion_2021-11.pdf

[13] Andrew Ackerman and AnnaMaria Andriotis, *Equifax Sent Lenders Inaccurate Credit Scores on Millions of Customers*, WALL STREET JOURNAL (Aug. 2, 2022, 3:11 pm), available at https://www.wsj.com/articles/equifax-sent-lenders-inaccurate-credit-scores-on-millions-of-consumers-11659467483 (last visited August 26, 2022).

[14] *Id.*

not limited to: (1) damage to their credit scores, ability to borrow, and/or ability to obtain credit; (2) time and money spent to avail themselves of assets and/or credit frozen or flagged due to inaccuracies; (3) lowered credit scores resulting from credit inquiries following inaccurate reports being provided to lenders; (4) money, including fees charged in some states, and time spent placing fraud alerts and security freezes on their credit records; (5) costs and lost time obtaining credit reports in order to monitor their credit records to attempt to understand the reasoning behind the denials due to the Glitch; (6) lost opportunity costs and loss of productivity from efforts to mitigate and address the adverse effects of the Glitch; (7) loss of the opportunity to control how their personal information is used; and (8) continuing risks to their financial health, which remains subject to further harmful inaccurate reporting as long as Equifax fails to undertake appropriate, legally required steps to protect and ensure the maximum possible accuracy when creating consumer reports using the personal information in its possession.

37.    This action seeks to hold Defendant accountable for its conduct and seeks vindication and recompense on behalf of the individual consumers who were harmed by Equifax's negligent and/or willful violations of the FCRA. Plaintiff seeks to recover FCRA actual, statutory, and punitive damages to the fullest extent allowable by law, and seeks injunctive relief.

## <u>CLASS ACTION ALLEGATIONS</u>

38.    Plaintiff seeks relief on behalf of himself and all others similarly situated under Federal Rule of Civil Procedure 23(b)(1), (b)(2), (b)(3), and/or (c)(4). Plaintiff seeks certification of a class defined as follows:

> All individuals and entities in the United States whose credit score or consumer report was inaccurately reported or inaccurately provided to an actual or potential lender by Equifax between March 17, 2022 through April 6, 2022 ("the Class").

39.    Specifically excluded from the Class are Equifax, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Equifax, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Equifax and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

40.    Plaintiff reserves the right to amend the Class definition above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

41.    This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

42.    Numerosity (Rule 23(a)(1)): The Class is so numerous that joinder of all Class members is impracticable. Although the precise number of such persons

is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiff estimates that the Class is comprised of millions of Class members. The Class is sufficiently numerous to warrant certification.

43.     Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of all other Class members, as the claims arise under the same federal statute and stem from the same course of conduct. All Class members were exposed to the same wrongful conduct because Equifax disseminated inaccurate credit information about them to a third party during a discrete period of time.

44.     Adequacy of Representation (Rule 23(a)(4)): Plaintiff will fairly and adequately represent and protect the interests of the Class.   Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

45.     Superiority (Rule 23(b)(3)): A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members is relatively small, the expense and burden of individual litigation make it unlikely for individual Class members to seek redress for the wrongful conduct asserted herein.  There will be no material difficulty in the management of this action as a class action.

46.    Predominant Common Questions (Rule 23(a)(2)): The claims of all Class members present common questions of law or fact, which predominate over any questions affecting only individual Class members, including:

a.  Whether Equifax's conduct violates the FCRA;

b.  Whether Equifax used reasonable procedures to ensure that the information included on consumer credit reports was accurate;

c.  Whether Equifax willfully failed to use reasonable procedures to ensure the information included on its consumer credit reports was accurate;

d.  Whether Equifax adequately disclosed its credit-reporting error to Class members;

e.  Whether the Class is entitled to injunctive relief to enjoin the unlawful conduct alleged herein, and the suitable form of such relief; and

f.  The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

47.    The Class is objectively defined and presently ascertainable. Its members can be readily identified based on records in Equifax's possession.

48.    Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

49.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, and establish incompatible standards of conduct for Equifax.  Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

## CAUSES OF ACTION

## COUNT I

**NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681, *et seq***
**(On behalf of Plaintiff and the Class)**

50.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

52.     By its above-described wrongful actions, inaction, and omissions, want of ordinary care, and the resulting harm to Plaintiff and Class Members, Equifax negligently violated the FCRA by failing to identify, adopt, maintain, and monitor reasonable procedures to assure the maximum possible accuracy of Plaintiff's and Class members' consumer credit information. 15 U.S.C. §§ 1681e(b), 1681o(a).

53.     Defendant has violated 15 U.S.C.A. § 1681e(b) because, due to the Glitch, Defendant failed to "follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates."

54.    Equifax acted negligently by failing to remedy its inadequate information verification measures and failing to take the reasonable steps necessary to assure the accuracy of its credit reports on Plaintiff and the other Class members.

55.    Despite lacking sufficient procedures regarding the accuracy of the consumer reports and credit scores that would have prevented the Glitch, Equifax relied on its insufficient and unreasonable procedures, and thus Equifax had no reason to believe that all of the information it included its consumer reports accurately pertained to the consumers who were the subjects of the requests.

56.    As a direct and proximate result of Equifax's actions and failures to act as described herein, Equifax offered, provided, and furnished Plaintiff's and Class Members' inaccurate consumer reports. In each instance, Equifax was in violation of 15 U.S.C. § 1681e.

57.    Equifax's failure to use reasonable information verification procedures resulted in a yet unknown number of inaccuracies on Equifax consumer account holder's credit reports, in violation of 15 U.S.C 1681e(b).

58.    Each instance in which Equifax negligently failed to comply with 15 U.S.C. 1681e(b) constitutes a separate violation of the FCRA for the purpose of assessing monetary damages.

59.     Under Section 1681 of the FCRA, Equifax is liable to Plaintiff and Class Members.  In addition to actual damages, Equifax is also liable for Plaintiff's and Class Members' costs and reasonable attorneys' fees, in amounts to be proven at trial, as well as punitive damages as the Court may allow. 15 U.S.C. § 1681n(a).

## COUNT II

### WILLFUL VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681, *et seq*
### (On Behalf of Plaintiff and the Class)

60.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

61.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

62.     Plaintiff and Class Members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

63.     In enacting the FCRA, Congress enumerated several findings made, including the need for consumer reporting agencies to "assume a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(4).

64.     At all relevant times, Equifax was a consumer reporting agency as defined by the FCRA.  Under 15 U.S.C. §1681a(f), a "consumer reporting agency" includes any person which, for monetary fees or on a cooperative nonprofit basis,

regularly engages in whole or in part, in the practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing "consumer reports" to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

65.    As a consumer reporting agency, Defendant was, and continues to be, required to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard, protect and ensure the accuracy of the consumer credit information in its possession, custody and control, including Plaintiff's and Class Members' credit reports and credit scores. *See* 15 U.S.C. 1681(b).

66.    At all relevant times, Equifax had compiled and maintained a "consumer report" on Plaintiff and Class Members as defined by the FCRA. 15 U.S.C. § 1681a(d)(1).

67.    As defined in 15 U.S.C. § 1681a(d)(1), a "consumer report" is any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used, expected to be used, or collected, in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for (i) credit or insurance to be

used primarily for personal, family, or household purposes, (ii) employment purposes, or (iii) any other purpose authorized by 15 U.S.C. § 1681b.

68.     Defendant's actions or inactions that allowed for the Glitch violate Defendant's duties and obligations as a credit reporting agency under the FCRA. Defendant's actions or inactions that allowed for inaccurate credit entries and or credit scores to be included on consumer reports also violate its duties and obligations as a credit reporting agency under the FCRA.

69.     As alleged herein, Defendant has engaged in a number of practices that, taken together, failed to use reasonable measures to provide for the maximum possible accuracy on consumer credit reports. Among other things, Defendant failed to:

a.     assess the risks of using outdated or otherwise problematic code that could and would result in inaccurate credit scores;

b.     take appropriate action to correct vulnerabilities or threats to the integrity of credit information given the known risks; and

c.     develop and disseminate comprehensive information integrity policies.

70.     Defendant's lack of reasonable data integrity and security measures directly caused damages to Plaintiff and Class Members.

71.    As a direct and proximate result of Equifax's actions and failures to act described herein, Equifax offered, provided, and furnished Plaintiff's and Class Members' inaccurate consumer reports. In each instance, Equifax was in violation of Section 1681e of the FCRA.

72.    Defendant has violated 15 U.S.C.A. § 1681e(b) because, due to the Glitch, Defendant failed to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

73.    Equifax's willful failure to use reasonable information verification procedures resulted in a yet unknown number of inaccuracies on Equifax consumer account holder's credit reports, in violation of § 1681e(b).

74.    In addition, Defendant's failure to comply with the foregoing requirements was willful because Defendant knew or should have known, but recklessly disregarded, that its information verification measures were inadequate and unreasonable and additional steps were necessary to protect Plaintiff and Class Members from the Glitch.

75.    Under Section 1681 of the FCRA, Equifax is liable to Plaintiff and Class members for failing to comply with the requirements that a consumer reporting agency not disclose consumer reports and take measures designed to avoid the unauthorized disclosure of consumer reports. Equifax therefore is liable

to Plaintiff and Class Members for their actual damages as a result of Equifax's failure to comply with the FCRA, as well as costs and reasonable attorneys' fees, in amounts to be proven at trial.

76.    Equifax's acts described herein constitute a pattern or practice of knowing violations, as set forth in Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A). Each instance in which Equifax has failed to comply with the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary damages.

77.    Plaintiff and Class Members also are entitled to recover punitive damages, under 15 U.S.C. § 1681n(a)(2), and their attorneys' fees, litigation expenses, and costs, under 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and his counsel as Class Counsel;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For damages in amounts to be determined by the Court and/or jury;

(e)    An award of statutory damages or penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    Such other and further relief as the Court deems necessary and appropriate.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury of all issues so triable.

Dated: August 30, 2022              Respectfully submitted,

By: _/s John C. Herman_
John C. Herman (Bar No. 347370)
Candace N. Smith (Bar No. 654910)
**HERMAN JONES LLP**
3424 Peachtree Road NE
Suite 1650
Atlanta, Georgia 30326
Telephone: 404-504-6555
Email: jherman@hermanjones.com
Email: csmith@hermanjones.com

**LEVI & KORSINSKY, LLP**
Mark S. Reich*
Courtney E. Maccarone*
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500

Facsimile: 212-363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com

**MIZRAHI KROUB LLP**
Joseph H. Mizrahi*
Edward Y. Kroub*
200 Vesey Street, 24th Fl
New York, NY 10281
Telephone 212-595-6200
Email: jmizrahi@mizrahikroub.com
Email: ekroub@mizrahikroub.com

*pro hac vice application forthcoming

*Counsel for Plaintiff*